Argued and submitted June 23, 1982, resubmitted In Banc February 9,
reversed and remanded February 16, 1983

JOSEPH,
*Appellant,*

*v.*

COHEN et al,
*Respondents.*

(A7910 05135; CA A21760)

658 P2d 544

Margaret H. Leek Leiberan, Portland, argued the cause
for appellant. With her on the briefs was Mitchell, Lang &
Smith, Portland.

Tyler Marshall, Portland, argued the cause for respondents. With him on the brief was Bouneff, Muller & Marshall, Portland.

JOSEPH, C. J.

Van Hoomissen, J., dissenting.

## JOSEPH, C. J.

Plaintiff brought this action on behalf of herself and other minority shareholders of Z & M, Inc., against the personal representatives of the estate of Gold for the recovery of damages to the corporation that were allegedly caused by Gold's intentional interference with the corporation's restaurant business. At the close of plaintiff's case, defendants moved for involuntary dismissal on the ground of insufficiency of the evidence. ORCP 54B(2). The motion was granted with prejudice, and plaintiff appeals.[1]

Z & M, Inc., was formed in July, 1977, for the purpose of creating and operating Antoine's, a restaurant and bar in downtown Portland. Of the corporation's 500 shares, Gold owned 50 percent; plaintiff, 25 percent; and plaintiff's brother and sister-in-law, each 12 1/2 percent. Plaintiff was the corporation's president and the general manager of Antoine's. Gold was both the corporation's secretary-treasurer and the landlord from whom the corporation leased its restaurant space. Antoine's opened in December, 1977, and closed in November, 1979, with four months' rent in arrears. On January 31, 1980, a bankruptcy petition was filed.

Plaintiff alleged:

"[S]ubstantially contemporaneously with the commencement of the said restaurant and bar business, the decedent Paul Gold commenced a course of conduct in bad faith with the intention and design of immediately interfering with, undermining and destroying the business of Z & M, Inc., and that this conduct has interfered with, undermined and destroyed the business."

Gold's alleged wrongful conduct consisted, in substantial part, of:

(a) advising equipment suppliers, tradesmen, customers, employes and the public that the restaurant was failing, that plaintiff was a poor manager, that the food and service were poor, that he would evict the operators of the restaurant and that his grandson would take over;

---

[1] The trial court also dismissed plaintiff's cause of action for an accounting and her cause of action in a consolidated case without prejudice. Those dismissals are not in issue on this appeal.

(b)   refusing to account for the balance of monies due Gold from the Portland Development Commission for the relocation of his "Stockmen's Club," whose assets were transferred to the corporation by Gold in exchange for his share of the corporation's stock;

(c)   indicating to plaintiff that written exercise of an option to lease the second floor was not required and later declaring the option terminated and refusing to allow the corporation to rent it under any circumstances; and

(d)   appearing daily at the restaurant to harass plaintiff by accusing her of dishonesty and poor managerial skills, bringing unpaid creditors to the restaurant during business hours and insisting in the presence of customers that the bills be paid and advising employes that he was going to close the restaurant and that they should seek other employment.

The trial court's order of dismissal stated:

"Upon motion of defendants for the dismissal, the court found the plaintiff had not proven the requisite intent on the part of defendant's decedent, Paul Gold, to cause the destruction of Z & M, Inc., and further found an absence of proof on which to base plaintiff's claim for damages."

Plaintiff first assigns as error the trial court's failure to state its findings of fact and conclusions of law. Under ORCP 54B(2), when a trial court grants an involuntary dismissal with prejudice based on insufficiency of the evidence, it must make findings:

"After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of facts may then determine them and render judgment of dismissal against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment of dismissal with prejudice against the plaintiff, *the court shall make findings as provided in Rule 62.*" (Emphasis supplied.)

ORCP 62A provides:

"Whenever any party appearing in a civil action tried by the court so demands prior to the commencement of the

trial, the court shall make special findings of fact, and shall state separately its conclusions of law thereon. In the absence of such a demand for special findings, the court may make either general or special findings. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact or conclusions of law appear therein."

■     One apparent purpose for the interlocking of Rules 54(B)(2) and 62 is to provide a reviewing court a basis for determining how and why the trial court concluded that a terminal judgment on the merits was appropriate at the close of the plaintiff's case. We conclude that the trial court must make the findings of fact and conclusions of law required by Rule 62. Its findings here do not meet that requirement.

In *Castro and Castro,* 51 Or App 707, 626 P2d 950 (1981), we held that a dismissal under ORCP 54B(2) without the making of Rule 62 findings could not be sustained. The issue there was child custody. The trial court made no findings, and we concluded that we could not meaningfully review the order.

■ ■     The trial court's order in this case is similarly defective. In granting defendant's motion under the rule, the judge sat as trier of fact, but the order is devoid of any findings of fact as a basis for his legal conclusions that plaintiff failed to prove the "requisite" intent and that there was an "absence of proof" of damages. We are unable to discern whether the trial court concluded that plaintiff put on no evidence to prove these elements, whether it disbelieved the evidence plaintiff did put on or whether it found it legally insufficient to make out her case.[2] Without

---

[2] In *Castro and Castro, supra,* 51 Or App at 710-13, we reviewed the history of ORCP 54B and the trial court's role in ruling on a motion for involuntary dismissal for insufficiency of the evidence. We said that the trial court's task is not to apply the prima facie test employed in ruling on a motion for a directed verdict (*i.e.,* viewing the evidence in the light most favorable to the party opposing the motion). Rather, the trial court may determine the facts and is free to discount impeachment evidence or to disbelieve plaintiff's evidence. It has then to apply the law to the facts as it finds them.

This role of the trial court as finder of fact was strongly criticized by Professor Steffen in *The Prima Facie Case in Non-Jury Trials,* 27 U Chic L Rev 94, 125 (1959), where he pointed out that it is an anomaly of our system of justice that a jury hears both sides of a controversy before reaching its verdict (assuming that plaintiff has made out a prima facie case) but that a judge, acting on a motion for

adequate factfinding by the trial court, we cannot determine whether the trial court properly applied the law to the facts. It is not our function to review the record to determine what the facts are. That is for the trial court to do. The plaintiff has put on her case, and a retrial is not required. It will be sufficient for the trial court to rectify the defects in the order by making the requisite findings and conclusions.[3]

Reversed and remanded.

**VAN HOOMISSEN, J.,** dissenting.

The majority reverses the trial judge because it finds that he did not make findings of fact. I would hold that the judge did make general findings and that that was sufficient.

The trial judge stated in pertinent part:

"THE COURT: * * * I do not find that the proof that was offered establishes that [defendant], by anything that he did, intended to cause the demise of Z & M, Inc. * * *

---

involuntary dismissal for insufficiency of the evidence, may decide for the defendant after hearing only one side, simply because he disbelieves the plaintiff.

Under the analogous federal Rule 41(b), the findings of fact of the trial judge cannot be set aside unless "clearly erroneous." The test is not one of substantial evidence to support the findings, but whether the reviewing court, on the *entire* evidence, concludes that a mistake has clearly been committed. *See* Wright and Miller, *Federal Practice and Procedure* § 2585 (1971). On the other hand, ORCP 62 provides for findings of fact to be given the "same force and effect, and be equally conclusive, as the verdict of a jury." ORCP 62F. A jury verdict is reached only after both sides have presented evidence, and the task on appellate review is to view the evidence in the light most favorable to the prevailing party. *See* *Hendrix v. McKee,* 281 Or 123, 126, 575 P2d 134 (1978). Thus, while ORCP 54B(2) and the federal rule are analogous, the standards for appellate review of the trial court's findings are quite different.

If plaintiff's evidence is unimpeached and not conflicting and makes out a *prima facie* case, but the trial court nevertheless grants a motion for involuntary dismissal under ORCP 54B(2), to view the evidence in the light most favorable to the prevailing party, *i.e.,* the defendant, may require that the reviewing court treat the plaintiff's evidence as unbelievable. Whether that is permissible under Article VII (Amended), section 3, of the Oregon Constitution remains to be decided in another case. In any event, we will not treat the plaintiff's evidence that way without a finding by the trier of fact that the evidence was not believable.

[3] While ORCP 54B(2) is derived from FRCP 41(b), ORCP 62 is not derived from FRCP 52 but from former ORS 17.431 and ORS 17.441. It is not at all clear whether the whole procedure described in Rule 62 was intended to be followed consequent on a dismissal under Rule 54B(2), and it is not necessary in this case to determine the question.

"I find that there has been a failure of proof of the underlying intent that's necessary to sustain this cause of action.

"I further find that there is an absence of proof with any specificity upon which the Court could, if I found deliberate interference with the intent to destroy the corporation, how the plaintiff has been damaged in this action. So on that cause of action I will allow the motion for directed verdict.

"* * * * *

"THE COURT: * * * [B]ased on the facts that you presented I conclude that you have not proved your cause of action.

"THE COURT: Factually you have not proved a cause of action.

"* * * * *

"THE COURT: I have found that you have not established the facts necessary to prove a cause of action. I don't know how to say it differently."

*Castro and Castro,* 51 Or App 707, 626 P2d 950 (1981), does not compel a different result. *Castro* is *sui generis.* It involved a child custody dispute. On *de novo* review, we found that the child was a third party to an adversary contest between his parents and that, because the child's interests was the controlling principle, the fairest course was for the trial judge to hear both sides before making a decision. We concluded that we could not exercise meaningful *de novo* review because of an incomplete record.

This is a civil action. We do not review *de novo.* Our review is limited to a determination of whether the judgment is supported by any evidence. We review whatever record the parties made below. Plaintiff did not make a pretrial request for special findings. She should not now be heard to complain that the trial judge did not make more extensive findings.

I dissent.

Warden, J., joins in this dissenting opinion.